UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OFA KAREEM DONALDSON, | : |
| Petitioner | : No. 4:CV-07-1072 |
| | : |
| vs. | : (Petition Filed 6/13/07) |
| | : |
| | : (Judge Muir) |
| CHARLES E. SAMUELS, Warden, | : |
| | : |
| Respondent | : |

**ORDER**

November 13, 2007

Oka Kareem Donaldson, ("Donaldson"), an inmate currently confined in the Schuylkill Federal Correctional Institution, ("FCI-Schuylkill") Minersville, Pennsylvania, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Named as respondent is Charles Samuels, Warden at FCI-Fort Dix, ("FCI-Fort Dix"), New Jersey, petitioner's prior place of confinement. Petitioner claims that while previously incarcerated at FCI-Fort Dix, his due process rights were violated during the course of a prison disciplinary hearing where he was found guilty of the prohibited act of Assault Without Injury, a violation of Disciplinary Code Section 224. Specifically, he claims that the Bureau of Prisons' ("BOP") failure to house him in administrative segregation, while the

investigation into his misconduct was proceeding, was a violation of his due process rights and also an affirmation of his innocence. (Doc. 1, petition). Thus, petitioner believes that because he was released into general population while the investigation into the misconduct occurred, and because his disciplinary hearing did not occur in a timely manner, he should not be held accountable for the misconduct. For relief, petitioner seeks the expungement of the misconduct report from his prison record and the restoration of the 27 days of good conduct time taken by the Discipline Hearing Officer ("DHO"). The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On March 14, 2005, at approximately 9:00 p.m., Petitioner was served with Incident Report No. 1321321 for "Assaulting Any Person " in violation of Disciplinary Code Section 224. (Doc. 3-2, Att. C, Incident Report). The incident report, which was written by Officer W. Archibald, reads as follows:

> Description of Incident (Date: 3/13/05 Time: 9:15 p.m. Staff became aware of incident)
> On 03-13-2005 at approximately 9:15 pm myself

2

> and Officer S. Miller were escorting inmate Donaldson, Ofa #09740-067 to his assigned cell. When I attempted to remove his restraints he would not place his hands through the mail slot until ordered to do so. Inmate Donaldson continually pulled on the restraints making it very difficult for me to remove them. Once I had the left hand restraint removed I quickly gained positive control of the restraints due to the fact inmate Donaldson was pulling on them. Throughout this incident I ordered inmate Donaldson numerous times to stop pulling on the restraints to which he would not comply. I attempted to remove the right restraint when Officer Miller ordered inmate Donaldson to stop pulling on the restraint to which he finally complied.

<u>Id</u>. The incident was then referred to the Federal Bureau of Investigation ("FBI). (Doc. 3-2, Att. J, Memorandum). On October 31, 2006, Warden Samuels approved a request filed by the Unit Disciplinary Committee ("UDC") for enlargement of time within which to conduct its hearing, based on the following:

> I am requesting approval to conduct a UDC hearing for Incident Report #1321321 on inmate Ofa Donaldson, #09740-067. The incident report was written on March 14, 2005, and was not released to be handled administratively until October 27, 2006.
>
> In accordance with Program Statement 5270.07, Inmate Discipline and Special Housing Units, the Warden's approval is required for any extension beyond five work days.

3

(Doc. 3-2, Att. J, Memorandum).

On November 9, 2006, Petitioner appeared before the UDC. (Doc. 3-2, Att. D). The UDC referred the charge to the DHO for greater sanctions than the UDC can impose if found guilty. (Doc. 3-2, Att. A).

On November 16, 2006, Petitioner appeared for a hearing before the DHO, T. Mulvey. (Doc. 7, Att. B, DHO Report). The DHO Report reflects the following:

> Inmate Donaldson was read his rights and acknowledged he understood. As the body of the incident report was being read to inmate Donaldson he became disruptive. Specifically, in a loud and aggressive manner he stated; "This shit is from last year. Why was I on the Compound. Fuck this. Get me out of here because somebody is going to get hurt." At that time, inmate Donaldson exited his chair and burst out the door into the hallway. While gaining control of inmate Donaldson, he attempted to assault the DHO. At that time, he was removed from the area and returned to his cell as his behavior was jeopardizing the safety of the institution. The hearing continued in his absence.

Id. The documentary evidence which the DHO considered in making his determination included the Incident Report and Investigation, a Memorandum dated March 13, 2005, from Lt. Christopher, a Memorandum dated March 13, 2005, from Senior

4

Officer Miller, a Memorandum dated March 13, 2005, from Senior Officer Archibald, a Memorandum dated March 14, 2005, from Senior Officer Miller, a Memorandum from L. N'Diaye, Acting Special Investigation Agent, stating that incident report had been released from FBI and could be handled administratively, a Memorandum dated October 31, 2006, from Warden Samuels, granting the UDC a time extension, and Injury Assessments dated March 13, 2005. Id. Confidential information was used by the DHO in support of his findings, but was not revealed to the inmate. Id. The confidential information was documented in a separate report. The report of the DHO outlined the evidence relied on as follows:

> I find on or about 03-13-05, at approximately 9:15 pm, you assaulted, without serious injury, another person at the Federal Correctional Institution Fort Dix, New Jersey.
>
> This decision is based on the evidence/ facts provided before me which is documented in the written report provided by the reporting employee. Specifically, the employee reports, When I attempted to remove inmate Donaldson's restraints he would not place his hands thru the meal slot until ordered to do so. Inmate Donaldson continually pulled on the restraints making it very difficult to remove them. Once the left hand restraint was removed, inmate Donaldson continued to pull on the restraint. Staff quickly gained positive control of him

5

due to the fact that he continued to pull on the restraints. Throughout the incident, inmate Donaldson refused several orders to stop pulling on the restraints. When an additional staff member intervened, inmate Donaldson complied and allowed staff to remove the restraints without further incident. These actions were construed as an attempt by inmate Donaldson to injure the reporting staff member.

The DHO considered the two memorandums submitted by the staff witness which further document the fact that you were not complainant (sic) when having your restraints removed. Specifically, you were leaning forward and pulling away from the officer. It was necessary for staff to gain positive control of you and the restraints. This was again construed as an effort by you to injure staff.

The DHO considered your Injury Assessment, dated 03-13-2005, where it is documented you sustained a 2mm head contusion and superficial laceration of your right wrist. This supports the fact that you were resisting staff efforts to remove your restraints and suffered these minor injuries when staff attempted to control you.

The DHO also considered your silence in this matter, as you requested to be removed from the hearing and were also disruptive. Additionally, during the investigation of this matter, you failed to provide a statement to the Investigative Lieutenant or the Unit Discipline Committee. Your silence is considered in conjunction with the other evidence.

>Lastly, the DHO finds the reporting officer and other staff member in the area, more creditable (sic) in this matter as staff have a legal obligation to provide truthful accounts of all incidents. If staff were found to have provided false information, they would face harsh consequences. Additionally, neither staff member has a vested interest in you or the outcome of this proceeding. Therefore, I determine staff version of events in this matter are credible.
>
>Based on the evidence/ facts provided before me, your actions are consistent with Code 224, Assaulting any Person.

Id. The DHO sanctioned Donaldson to 30 days in disciplinary segregation and 27 days disallowance of good conduct time. Id. The DHO documented his reasons for the sanctions given as follows:

>Assaulting another person as documented in this incident demonstrates a disregard for the rules and regulations as established as well as could result in more serious injuries being sustained not only by the participants but also by others during their efforts to resolve the situation.
>
>Disciplinary Segregation and Disallowance of Good Conduct is meant to demonstrate the seriousness of the offense to you as well as everyone incarcerated at this facility.

Id.

7

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres vs. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff vs. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and

8

correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent vs. Hill, 472 U.S. 445-46 (1985); see also Griffin vs. Spratt, 969 F.2d 16, 19 (3d Cir.1992).  If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl vs. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994).  Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has

9

been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing.[1] 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

Construing this pro se petitioner's claims liberally,

---

[1] Donaldson was charged with an offense in the high severity category, assaulting another person. See 28 C.F.R. § 541.13, Table 3.

10

Donaldson claims that his delay in the receipt of his initial hearing violated the BOP's regulations and his due process rights. The Court finds no merit to Donaldson's argument.

Donaldson received his incident report on Monday, March 14, 2005. The "ordinary" three-day period to conduct his UDC hearing expired on Thursday, March 17, 2005. At that time the matter had been referred to the FBI for possible prosecution. Pursuant to BOP regulations,

> When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur.

See 28 C.F.R. § 541.14(b)(1). Thus, the UDC properly suspended their investigation into the incident, pending the outcome of the FBI investigation. On October 27, 2006, the FBI released their findings and their decision not to prosecute. On October 31, 2006, upon receipt of the FBI's findings, the UDC, requested an enlargement of time within which to conduct Petitioner's hearing. Donaldson received his UDC hearing on November 16,

11

2006. While the language of the BOP's disciplinary proceedings note that UDC hearings are "ordinarily" held within three days of staff's learning of their involvement in an incident, the regulation also allows for extensions of this time frame for good cause. In this instance the UDC followed procedures and sought an extension from the Warden due to the FBI investigation. Therefore, the UDC did not violate BOP procedure.

Moreover, the Court finds that the delay in Petitioner's initial hearing does not automatically equate to a violation of his Due Process rights. See Flanagan vs. Shively, 783 F.Supp. 922, 931 (M.D. Pa. 1992)("The Constitution does not require strict adherence to administrative regulations and guidelines.") The Constitution only requires compliance with minimal federal due process standards. Id. Wolff does not set a three- or seven-day limit, or any time limit, for the hearing. No Due Process violation occurred by holding petitioner's initial hearing outside of the "ordinary" three-day period.

Furthermore, the true measure of whether a due process violation occurred as a result of a delay in Donaldson's disciplinary process is whether he suffered harm or some form of

12

prejudice as a result.  See Von Kahl vs. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa. 1994).  This is not a case that petitioner was denied a hearing before the UDC or DHO.  He does not dispute the DHO's findings.  He simply argues that "procedural issues" were not followed.  Nowhere in his petition does Donaldson argue that he was harmed, prejudiced or otherwise disadvantaged by the delay in his UDC hearing.  Von Kahl, 855 F.Supp. at 1421-1422 ("[T]his court is reluctant to overtax and/or hamstring prison officials' execution of disciplinary policies and procedures by mandating an automatic remand for technical non-compliance with a regulation, absent some showing of prejudice to the inmate."). Under the circumstances there was no violation of Petitioner's Due Process rights.

Donaldson was afforded all of the required procedural rights set forth in Wolff.  He received timely notice of the incident report.  He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Petitioner chose to proceed without staff representation, or make his own statement. Id.  Petitioner also received a written

13

decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Id. Petitioner was then notified of his right to appeal. Id.

Since petitioner was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. In addition to the investigative report and staff memoranda, the DHO also considered petitioner's injury assessment to conclude that the greater weight of the evidence supported a finding of guilt. Thus, based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 200 level offenses:

    B.1. Disallow ordinarily between 14 and 27

14

```
        days of good conduct time;
        D. Disciplinary segregation (up to 30 days);
        and,
```

28 C.F.R. § 541.13 (Tables 3 and 4).  Thus, the sanctions imposed by the DHO in the present case (i.e., 30 days disciplinary segregation and loss of 27 days of good conduct time) were consistent with the severity level of the prohibited act and within the maximum available to the DHO.  Accordingly, the petition will be denied.

**IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Courts is directed to **CLOSE** this case.

```
                    s/Malcolm Muir
                    MUIR
                    United States District Judge
```